IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARL SMITH, deceased, by and )
through Lavern Smith, his next best )
friend and administrator of )
The Estate of Carl Smith, )
 )
       Plaintiff, )
 )
v. ) No. 05 C 1264
 )
 )
COOK COUNTY d/b/a CERMAK )
HEALTH SERVICES, et al., )
 )
       Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff's motion for reconsideration and Plaintiff's motions in limine. This matter is also before the court on Defendants' motions in limine. For the reasons stated below, we deny Plaintiff's motion for reconsideration. We also grant in part and deny in part Plaintiff's motions in limine and we grant in part and deny in part Defendants' motions in limine.

## BACKGROUND

This is an action was brought by the estate of Carl Smith ("Smith") who was

1

allegedly a detainee in the custody of the Cook County Department of Corrections. Smith had allegedly received a liver transplant in January 2004, which was approximately seven months prior to the date that Smith was allegedly arrested, charged with attempted residential burglary, and eventually taken to the Cook County Jail. According to the complaint, at the time that Smith was taken into custody, he had been on a regiment of anti-rejection medications relating to his prior liver transplant. The allegations in the complaint state that, although medical staff at the Cook County Jail recognized that his prescriptions were necessary, Smith only received his medications sporadically and missed several doses in the week following his detention. On August 10, 2004, Smith allegedly passed out after experiencing severe abdominal pain and was taken to the hospital where he was later informed he was suffering from a reactivation of Hepatitis C, which was the underlying condition that necessitated his liver transplant. Smith was also allegedly informed that his condition was terminal. Five months later, in January 2005, Smith died.

Smith's wife, Laverne Smith, who is the administrator of Smith's estate, brought the instant action and includes in the second amended complaint, a claim alleging violations of Smith's constitutional rights brought under 42 U.S.C. § 1983 ("Section 1983") against Defendant Michael F. Sheahan in his official capacity as Sheriff of Cook County (Count I), a Section 1983 claim brought against Defendant Cermak Health Services (Count II), a Section 1983 claim brought against Defendant Barbara Davis, Defendant Andrew Ting ("Ting"), Defendant Mohamed Mansour,

2

Defendant Tiffany Delane, Defendant Kathleen Watson, and Defendant Rose McBride (collectively referred to as "Individual Defendants") (Count III), an intentional infliction of emotional distress claim brought under Illinois law against all Defendants (Count IV), a wrongful death claim brought under Illinois law against all Defendants (Count V), and a survival claim brought under Illinois law against all Defendants (Count VI). All Defendants moved for summary judgment and moved to strike two letters that had been written by Smith before he died. Plaintiff also moved for summary judgment. The prior judge assigned to this case denied Plaintiff's motion for summary judgment, granted Defendants' motion for summary judgment only with respect to the claims against Ting, denied the remainder of Defendants' motion for summary judgment, and granted Defendants' motion to strike. Plaintiff brought a motion to reconsider the prior judge's ruling on the motion to strike and all parties filed motions in limine. The instant action was reassigned to the undersigned judge on March 9, 2009, and we scheduled a jury trial to start on April 20, 2009.

## DISCUSSION

I. Plaintiff's Motion For Reconsideration

Plaintiff moves for reconsideration of the prior judge's order granting Defendants' motion to strike two handwritten letters as inadmissible. The letters at issue were written by Smith in September and November 2004, which was subsequent to the date that Smith was diagnosed with a terminal reactivation of his

Hepatitis C, but several months prior to the date of Smith's actual death. At the summary judgment stage, Defendants moved to strike the two letters arguing that they were inadmissible hearsay. Plaintiff argued, in opposition to the motion to strike, that the letters fall under the dying declaration exception to the hearsay rule enumerated in Federal Rule of Evidence 804(b)(2) ("Rule 804(b)(2)"). Rule 804(b)(2) provides that "a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death" is "not excluded by the hearsay rule." Fed. R. Evid. 804(b)(2). The prior judge in this case agreed with Defendants and found that the letters were inadmissible hearsay that did not fall under the dying declaration exception. In doing so, the prior judge rejected Plaintiff's contention that the requirement in Rule 804(b)(2) that the declarant believe his death was imminent should be construed broadly to include the instant situation where the declarant was subjectively aware of the certainty of his death. The prior judge observed that doing away with the "imminent" requirement in Rule 804(b)(2) "rewrites the rule," which is something that courts "cannot do." *Smith v. Sheahan*, 2008 WL 4276221, at *10 (N.D. Ill. 2008). Based on the fact that Plaintiff had not shown that the letters were written on belief of imminent death, the prior judge granted the motion to strike.

Plaintiff now argues that the prior judge erred in granting the motion to strike since Smith wrote the letters after he received the news of his prognosis that he had "days or weeks to live." (Mot. Recon. 12). Plaintiff argues that, based on the record, there was a sufficient belief of imminent death to qualify the letters under the dying

declaration exception. A party is entitled to bring a motion to reconsider "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)(quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). In addition, under the "law of the case doctrine," there is a "presumption against reopening matters already decided," which the Seventh Circuit has found to "hold[] when a case is reassigned from one judge to another." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). As the Seventh Circuit has stated, "[i]n situations where a different member of the same court re-examines a prior ruling, 'the law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one.'" *Id.* (quoting in part *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005)).

As an initial matter, this issue was fully briefed before the previous judge and most of the arguments now raised by Plaintiff were also raised when the issue was first addressed. Plaintiff now contends that the prior judge did not have the benefit of certain evidence including medical records relating to Smith's prognosis at the time that Smith authored the letters in question as well as an affidavit from Smith's wife regarding Smith's condition and mind-set at the time of the two letters. The medical records provided by Plaintiff in support of the motion for reconsideration note that Smith was informed of several facts about his medical condition including the fact that his liver was "failing" and that his "prognosis was poor." (Mot. Recon.

Ex. 1). The records also reflect that Smith was "distraught" over his poor condition and that he and his wife were aware of the fact that he only had "days to weeks" left to live. (Mot. Recon. Ex. 3). The affidavit submitted by Smith's wife also confirms that Smith was aware of the fact that his condition was "terminal" and that he "knew he was dying." (Mot. Recon. Ex. 5).

Even in light of the medical records and the affidavit of Smith's wife, Plaintiff has failed to point to a manifest error of law in the prior judge's ruling and has failed to show that Smith penned the letters under the subjective belief that his death was imminent. In granting Defendants' motion to strike, the prior judge correctly noted that "'[f]ear or even belief that illness will end in death will not avail itself to make a dying declaration'" and that "'[t]he patient must have spoken with the consciousness of a swift and certain doom.'" *Smith*, 2008 WL 4276221, at *9 (quoting *Shephard v. United States*, 290 U.S. 96, 99-100 (1933)). The evidence presented by Plaintiff does not suggest that, in writing the letters, Smith was acting on a belief of imminent death. Rather the medical records and the affidavit of Smith's wife demonstrate that Smith was coming to terms with the fact that he was suffering from a terminal illness. While the records suggests that Smith was aware of the certainty of his death, as the prior judge found, there is nothing to suggest that Smith was aware his death was imminent.

Furthermore, we find that Plaintiff's reliance on *Webb v. Lane*, 922 F.2d 390 (7th Cir. 1991), is misplaced. While the Seventh Circuit in *Webb* allowed for the inference of a declarant's belief in impending death from the seriousness of the

declarant's injuries, the Court did not abrogate the temporal requirement that such a belief must be a belief that death is "*imminent*." *Id.* at 395-96 (emphasis added). In *Webb*, it was the gravity of the declarant's injuries caused by six gunshot wounds to the chest and abdomen of the declarant and the fact that the declarant was attached to life support that allowed the Court to infer that the declarant was speaking under a belief of imminent death. *Id.* at 396. Such facts do not exist in the instant action where the Smith wrote the two letters over a month apart and appeared at court hearings in between the writing of the letters.

In this case, Plaintiff seeks to extend the Seventh's Circuit's holding in *Webb* to an extent that would render the imminency requirement in Rule 804(b)(2) to be meaningless. Plaintiff has not shown a manifest error of law under the standard for a motion to reconsider and has not shown any grounds for disturbing the prior judge's ruling consistent with the law of the case doctrine. We do note that the instant motion was filed by Plaintiff and responded to by Defendants prior to the reassignment of the instant action. However, even if the presumption against revisiting decisions of a prior judge that is embodied in the law of the case doctrine was not in effect, Plaintiff would still not be entitled to reconsideration of the prior order granting the motion to strike. Therefore, we deny Plaintiff's motion for reconsideration.

II. Plaintiff's Motions in Limine

Plaintiff filed fifteen motions in limine. The prior judge assigned to this case

7

granted Plaintiff's Motions in Limine 5, 7, 8, 11, 13, 14, and 15. Defendants have filed a response in opposition to Plaintiff's Motions in Limine 1, 2, 3, 4, and 6. Defendants have also indicated that they have no objection to Plaintiff's Motion in Limine 9, 10, and 12. Plaintiff's Motion in Limine 9 seeks to bar evidence or argument relating to the fact that Smith and his wife received financial aid from the Government. Plaintiff's Motion in Limine 10 seeks to bar any suggestion that the liver transplant Smith received was defective. Plaintiff's Motion in Limine 12 seeks to bar reference to the fact that Smith was denied a liver transplant by the University of Chicago and seeks to redact an expert report indicating as such. Therefore, we grant Plaintiff's Motions in Limine 9, 10, and 12 without objection.

### A. Smith's Criminal Background (P. Mot. in Lim. 1, 2, 3)

In Plaintiff's Motions in Limine 1, 2, and 3, Plaintiff argues that the court should bar all references to Smith's criminal background, including Smith's prior criminal history (P Mot. in Lim. 1), the pending charges against Smith at the time of his death (P Mot. in Lim. 2), and Smith's prior incarcerations associated with the Cook County Department of Corrections. (P Mot. in Lim. 3). Plaintiff argues that such evidence would not be relevant pursuant to Federal Rule of Evidence 402 ("Rule 402") and would be overly prejudicial and barred under Federal Rule of Evidence 403 ("Rule 403"). In Defendants' response to these motions in limine, they argue that evidence of the pending charges against Smith are directly relevant to the claims at issue since such evidence explains the circumstances for why Smith was

8

taken to the Cook County Jail, and why Smith was in the care of certain Defendants. Defendants also argue that evidence of Smith's prior criminal history is also directly relevant to the issue of Smith's knowledge of medical screening procedures at the Cook County Jail and Smith's understanding of how medications are dispensed to detainees.

We agree with Defendants that evidence of the pending charges against Smith at the time of the events in question is relevant to the claims at issue since it explains why Smith came to be in the custody of the Cook County Jail and why Smith was seen by certain medical personnel. We further find that such evidence relating to the pending charges against Smith has a significant probative value that is not "substantially outweighed by the danger of unfair prejudice. . . ." Fed. R. Evid. 403.

However, the court finds that the evidence relating to Smith's prior criminal conduct and prior incarcerations that were not the basis for Smith's 2004 detention is not admissible. To the extent that such evidence has any probative value to demonstrate Smith's familiarity with the medical procedures at the Cook County Jail, that slight probative value is substantially outweighed by the danger of unfair prejudicial effect of such evidence and is therefore barred by Rule 403. However, if Plaintiff opens the door relating to his good character or law abiding nature, Defendants may request the court to allow them to introduce evidence relating to Smith's prior criminal conduct. Therefore, based on the above, we grant Plaintiff's Motion in Limine 1 and Motion in Limine 3 relating to Smith's criminal history and prior incarcerations. We also deny Plaintiff's Motion in Limine 2 relating to the

9

pending charges against Smith at the time of his death.

B. Cause of Smith's Illness (P. Mot. in Lim. 4)

In Plaintiff's Motion in Limine 4, Plaintiff argues that Defendants should be barred from introducing any argument or evidence relating to the cause of Smith's contraction of Hepatitis C, including evidence that Smith contracted Hepatitis C as a result of IV drug use and alcohol consumption. Plaintiff argues that such evidence is not relevant under Rule 402 and, even if such evidence is relevant, it should be barred under Rule 403. Defendants argue that the cause of Smith's death is the central issue in the case and that it will be their contention that the cause of Smith's death was his Hepatitis C and not Smith's lack of the anti-rejection medications. Defendants thus argue that the cause of Smith's contraction of Hepatitis C is relevant. We disagree.

Even though Defendants are correct that the cause of Smith's death is an issue in the case, Smith's affliction with Hepatitis C is not contested. Defendants can certainly argue that Smith's Hepatitis C was the cause of his death without introducing the issue of how Smith originally contracted Hepatitis C, which occurred before the events at issue in this case. Defendants have not pointed to any medical basis for why the origin of Smith's Hepatitis C would be relevant to the facts of this case. Thus, the probative value of such evidence remains minimal and is substantially outweighed by the possibility of an unfair prejudicial effect. Therefore, we grant Plaintiff's Motion in Limine 4.

### C. Marital Discord (P. Mot. in Lim. 6)

In Plaintiff's Motion in Limine 6, Plaintiff argues that Defendants should be barred from introducing any evidence or making any argument relating to marital discord between Smith and his wife at any time. Included in Plaintiff's motion is the argument that Defendants should not be permitted to introduce evidence that Smith's wife asked Smith to leave the marital home or evidence that Smith resided in a nursing home for a period of time. In opposition to Plaintiff's Motion in Limine 6, Defendants argue that they intend to introduce evidence that Smith left the home of his wife due to marital discord approximately a week before he was arrested and that Smith's wife had been responsible for dispensing Smith's medications. Thus, Defendants argue that the marital discord at that time between Smith and his wife is directly relevant to the issue of whether Smith had been taking his proper medications in the week prior to the date that he was detained. We agree with Defendants that such evidence is highly probative to the central issue of the case which is the precise cause of Smith's death. We further find that the probative value of such evidence is not "substantially outweighed by the danger of unfair prejudice. . . ." Fed. R. Evid. 403. Therefore, we deny Plaintiff's Motion in Limine 6.

### III. Defendants' Motions in Limine

Defendants filed eight motions in limine. The prior judge assigned to this case granted Defendants' Motions in Limine 1, 5, 6, 7, and 8. Plaintiff has filed an opposition to Defendants' Motions in Limine 2 and 3. The prior judge assigned to

this case entered and continued Defendants' Motion in Limine 4, which seeks to bar the two handwritten letters that were the subject of Defendants' motion to strike and Plaintiff's subsequent motion for reconsideration. In light of the court's above ruling on Plaintiff's motion for reconsideration, we grant Defendants' Motion in Limine 4 relating to evidence of Smith's handwritten letters.

A. Evidence of State Law Claims (D Mot. in Lim. 2)

In Defendants' Motion in Limine 2, Defendants argue that Plaintiff should be barred from introducing any evidence related to Plaintiff's state law claims in Counts IV, V, and VI, since all Defendants in this case are immune from suit under the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq.* ("Tort Immunity Act"). The court notes that Defendants already raised the issue of immunity with respect to the state law claims in their motion for summary judgment. At the summary judgment stage, Defendants argued that summary judgment should be granted in their favor on Plaintiff's state law claims since all Defendants were immunized from suit by 745 ILCS 10/4-105 ("Section 4-105"), which shields public employees from liability for injuries "proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody" with the exception of the case where "the employee . . . knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care." 745 ILCS 10/4-105. The prior judge denied Defendants' motion for summary judgment on Plaintiff's state law claims,

holding that there were material issues of fact remaining as to whether Defendants acted with "'willful and wanton conduct'" when they allegedly failed to administer to Smith's medical needs. *Smith*, 2008 WL 4276221, at *9 (quoting 745 ILCS 10/4-105). Defendants now reassert that they are immune under Section 4-105 and also point to two other provisions in the Tort Immunity Act, which they claim bar Plaintiff's state law claims against them. The two other provisions now relied on by Defendants are 745 ILCS 10/106-105 ("Section 6-105"), which gives absolute immunity to a public employee for "injury caused by the failure to make a physical or mental examination . . . for the purpose of determining whether such person has a disease or physical or mental condition. . . ," *id.*, and 745 ILCS 10/4-103 ("Section 4-103"), which gives absolute immunity to a public employee for "failure to provide sufficient equipment, personnel, supervision or facilities" in a jail or detention facility. *Id.*

With respect to immunity under Section 4-105, the prior judge in this case already ruled that issues of fact remain and indicated that a reasonable jury could find that Defendants are not shielded from immunity under that section. Defendants have not raised sufficient grounds for this court to revisit that ruling in light of the of law of the case doctrine. *Minch*, 486 F.3d at 301 (stating that the law of the case doctrine creates a presumption against reopening matters already decided by a prior judge).

With respect to immunity under Section 6-105, this is the first time that Defendants have raised such a defense in this action. Absolute immunity is an

13

affirmative defense which "may be deemed as waived if not properly and timely presented before the district court." *Walsh v. Mellas*, 837 F.2d 789, 799 (7th Cir. 1988). The proper means of raising an affirmative defense is in the answer to the complaint. Fed. R. Civ. P. 8(c); *Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990). Defendants never raised Section 6-105 as affirmative defense in their answer to Plaintiff's complaint. Furthermore, not only did Defendants fail to assert Section 6-105 as an affirmative defense in their answer, they also never raised it in either their motion to dismiss or motion for summary judgment. Instead, Defendants have waited to assert such a defense until the eve of trial in the form of a motion in limine. Defendants are improperly seeking judgment as a matter of law on the state law claims in the form of a motion in limine. Under these circumstances, we agree with Plaintiff that Defendants have waived their right to assert Section 6-105 as an affirmative defense since they have not raised it in a timely and proper manner. *Walsh*, 837 F.2d at 799.

With respect to immunity under Section 4-103, Defendants did raise this as an affirmative defense at the outset of the case. However, as with Section 6-105, Defendants failed to raise the issue with the court on either their motion to dismiss or their motion for summary judgment. Again, Defendants have waited until the eve of trial to assert the defense and essentially argue in the form of a motion in limine that they are entitled to judgment as a matter of law on Plaintiff's state law claims, a position which is contrary to what the prior judge concluded. To the extent that Section 4-103 is properly raised with the court and has not been waived through

Defendants' failure to assert the defense at prior stages of the litigation, we disagree with Defendants that Section 4-103 is applicable in this case. Plaintiff's claims in this case clearly relate to the failure to provide adequate medical care which is already addressed in Section 4-105. Other district courts that have addressed the relationship between Section 4-105 and Section 4-103 have found that there is a boundary between immunity under each section. *See Estate of Carlock ex rel Andreatta-Carlock v. Williamson*, 2008 WL 5060280, at *3 (C.D. Ill. 2008)(stating that "[t]he Illinois General Assembly did not intend the term 'equipment' and 'facilities' to cover the provision of all medical care" and that interpreting Section 4-103 to apply to cases involving failure to provide medical care would "render the exception [in Section 4-105] a nullity and frustrate the General Assembly's intent"); *Fitch v. Doe*, 2007 WL 1424329, at *4 (S.D. Ill. 2007)(holding that immunity under Section 4-103 did not apply in a case where the plaintiff alleged a failure to provide necessary medication).

We agree with the other district courts that have examined this issue to date and concluded that Section 4-103 is separate and distinct from Section 4-105 and that the two provisions were not intended by the Illinois General Assembly to be overlapping. The instant action is clearly one that falls under the language in Section 4-105 which includes a possible exception to immunity in cases of willful or wanton conduct. 745 ILCS 10/4-105. The prior judge has already addressed the issue of immunity at the proper stages in the litigation and found that there are genuine issues of fact for trial. Defendants have not pointed to any provision of Illinois law or any

case law that would justify disturbing that conclusion via a motion in limine. Therefore, we deny Defendants' Motion in Limine 2.

### B. References to Indemnification and Defense Counsel (D Mot. in Lim. 3)

Defendants request in their Motion in Limine 3 that the court bar Plaintiff from offering any testimony or evidence indicating that the Individual Defendants may be indemnified against any judgment in this action. Plaintiff argues that Defendants could open the door by offering evidence that suggests that the Individual Defendants would be individually liable or impoverished if a judgment were entered against them. Defendants do not indicate that they intend to present evidence to show that the Individual Defendants will be unable to pay the potential damage award. Therefore, we find that evidence of indemnification should be barred. However, if Defendants open the door by attempting to convey to the trier of fact that the Individual Defendants face potential impoverishment or an inability to pay a potential judgment, Plaintiff may request that the court revisit the issue of the introduction of evidence of indemnification.

Also included in Defendants' Motion in Limine 3 is a request that Plaintiff be barred from referencing Defendants' attorneys in a manner that places in the jury's mind the fact that the Individual Officers will be indemnified. Defendants argue that Plaintiff should specifically refrain from using phrases such as "Assistant State's Attorneys," "County Lawyers," "State," or "Government" when referring to attorneys for Defendants. Plaintiff argues that such phrases would not be overly

16

prejudicial. We agree with Defendants that use of such phrases would have no relevant purpose and that there is a danger of prejudice to Defendants. Thus, we grant Defendants' Motion in Limine 3 in its entirety.

## CONCLUSION

Based on the foregoing analysis, we deny Plaintiff's motion for reconsideration. We also grant Plaintiff's Motions in Limine 2, 4, 9, 10, and 12, and we deny Plaintiff's Motions in Limine 1, 3, and 6. Finally, we grant Defendants' Motions in Limine 3 and 4, and we deny Defendants' Motion in Limine 2.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 8, 2009